UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARY ROSE SALMON,

                      Plaintiff,

      v.                                     12-CV-1536

CAROLYN W. COLVIN,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **DECISION and ORDER**

Plaintiff Mary Rose Salmon brought this suit under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability and supplemental security benefits.

## I.    FACTS

On the alleged onset date of January 21, 2009, Plaintiff was 34 years old. (Tr. 178). Plaintiff has a high school education. (Tr. 186). She reported past work as a highway maintenance worker. (Tr. 183). Plaintiff's date last insured is December 31, 2013.[1] (Tr. 178).

    **a.**    **Medical evidence**

On March 30, 2004, Plaintiff presented to Nicholas Ricciardi, M.D., at Syracuse

---

[1] "In order to qualify for disability payments under the Social Security Act, the wage earner must show disability on or prior to the last date on which she was insured under the Act." *Gold v. Secretary of Health, Educ. & Welfare*, 463 F.2d 38, 41 (2d Cir. 1972).

Orthopedic Specialists ("SOS"). Plaintiff reported experiencing left hip pain since injuring herself in a work-related accident on January 21, 2004. (Tr. 361-62). Dr. Ricciardi noted that Plaintiff worked as a truck driver for the state department of transportation and was "trying to get into the truck when she slipped on the ice[,] injuring the left hip." (Tr. 361). Plaintiff reported experiencing radiating hip pain, which is worsened with activity and sitting. (Tr. 361). Examination revealed mild restriction to rotation of both hips and "significant tightness in the illiotibial band on both sides with positive Ober testing." (Tr. 361). Dr. Ricciardi diagnosed Plaintiff as likely suffering from arthritis. (Tr. 362). He prescribed chiropractic treatment. (Tr. 362).

On January 10, 2005, Plaintiff again treated with Dr. Ricciardi for left hip pain. (T 351-52). Plaintiff reported experiencing "chronic discomfort," which she treated with Tylenol. (Tr. 351). Examination revealed restriction to rotation in both hips and tightness of the illiotibial band. (Tr. 351). Dr. Ricciardi diagnosed Plaintiff as suffering from illiotibial band contracture and trochanteric bursitis of the left hip. (Tr. 351). He continued Plaintiff on "self-directed exercises." (Tr. 351).

On March 23, 2007, Plaintiff presented to J. White, M.D., for an evaluation of right middle finger pain. (Tr. 289). Plaintiff reported experiencing "persistent problems with pain that occurs . . . to the third metacarpal phalangeal region." (Tr. 289). Plaintiff noted experiencing "persistent swelling" and pain with pushing with that finger. (Tr. 289). Examination revealed "obvious swelling" of the third MCP joint and "palpable bony osteophytes on the dorsal aspect of the right [third] finger at the MCP joint level." (Tr. 289). Dr. White noted that Plaintiff's x-rays revealed "advanced osteoarthritis of the right [third] MCP joint." (Tr. 281). He prescribed topical arthritis cream. (Tr. 351).

On September 19, 2007, Plaintiff treated with Jeff Mulholland, M.D. (Tr. 436). Plaintiff reported injuring herself at work six days prior. (Tr. 436). Plaintiff stated that she was "helping lift a box beam and was twisting her body trying to get it up on the truck when she felt a sharp pain in her back." (Tr. 436). Plaintiff treated at Urgent Care, where she was prescribed Darvocet and Skelaxin. (Tr. 436). Examination revealed tenderness to the lumbar area on the paraspinal muscles and palpable spasm. (Tr. 436). Dr. White prescribed stretching and continued Plaintiff on Skelaxin and Darvocet. (Tr. 436). On July 24, 2008, Plaintiff treated for a numbness and tingling in the left arm. (Tr. 301). Plaintiff noted that the tingling went primarily into her hand and seems to start in the elbow. (Tr. 301). Plaintiff noted that the tingling was worse while working and that it interfered with her ability to sleep. (Tr. 301). Examination revealed positive Phalen's and Tinel's signs. (Tr. 301). She was diagnosed with left carpal tunnel syndrome and was prescribed a cock-up wrist splint. (Tr. 301).

On July 31, 2008, an EMG of Plaintiff's left arm revealed a "moderate stage left median nerve entrapment neuropathy at the region of the carpal tunnel." (Tr. 255). On August 4, 2008, Plaintiff again treated for left carpal tunnel syndrome. (Tr. 304). An examination revealed positive Tinel's and Phalen's tests and a "little bit of hypothenar wasting and some decreased pinscher grasp." (Tr. 304). Plaintiff was referred to orthopedics. (Tr. 304).

On September 4, 2008, Plaintiff treated with Joseph Mannino, M.D., at Hamilton Orthopaedic Surgery and Sports Medicine. (Tr. 271-73). Dr. Mannino noted that Plaintiff's recent EMG showed "very specific entrapment of the median nerve at the level of the carpal canal." (Tr. 271-73). Plaintiff reported that her "left hand will go numb as she tries

to use it" and noted experiencing "difficulty using the hand and manipulating objects." (Tr. 271). Dr. Mannino also noted that Plaintiff has "continued complaints about her right hand," which she injured at work causing "some very specific changes of the right MCP joint of the middle finger." (Tr. 271). Plaintiff reported recently reinjuring the finger, "buckling the finger backwards." (Tr. 271). Examination revealed a positive Phalen's sign on the left and an "obvious deformity about the right MCP joint" with "quite a bit of swelling directly in this area and a little bit of warmth." (Tr. 272). Dr. Mannino noted that Plaintiff's flexion of that finger "comes slowly and [she] has difficulty tucking that finger down." (Tr. 273). He diagnosed Plaintiff as suffering from left carpal tunnel syndrome and right MCP arthritis. (Tr. 273). Dr. Mannino sought insurance authorization for a left carpal tunnel release and noted that "[o]nce the left hand is better" an arthroplasty of Plaintiff's right hand will be considered. (Tr. 273).

On September 29, 2008, Dr. Mannino performed a left carpal tunnel release. (Tr. 295-96). He placed Plaintiff on total disability. (Tr. 294).

On October 23, 2008, Plaintiff treated with Dr. Mannino for "trouble with her left knee." (Tr. 268). Plaintiff reported experiencing pain while squatting. (Tr. 268). Dr. Mannino noted that a recent MRI revealed an effusion about the knee and chondromalacia of the patella. (Tr. 268). Dr. Mannino stated, "[t]here is some very specific thinning laterally and some small spurs starting to form along that lateral side as well." (Tr. 268). He diagnosed Plaintiff as suffering from chondromalacia and prescribed Naprosyn. (Tr. 268).

On November 21, 2008, Plaintiff followed up with Dr. Mannino for left carpal tunnel syndrome. (Tr. 266-67). Dr. Mannino noted that Plaintiff was "progress[ing] slowly with quite a bit of soreness about the hand" and occasional numbness. (Tr. 266).

On January 16, 2009, Plaintiff treated with Dr. Mulholland for lower back pain. (Tr. 431-32). Plaintiff reported experiencing worsening back pain for the last few months and noted that walking and climbing exacerbate her pain. (Tr. 431). Plaintiff stated that "[d]uring sleep she sometimes wakes up and feels like . . . her left leg is going numb." (Tr. 431). Dr. Mulholland diagnosed Plaintiff as suffering from chronic back pain and ordered an orthopedic consultation. (Tr. 431).

On January 23, 2009, an x-ray of Plaintiff's lumbar spine revealed minimal rotary scoliosis, prominent lumbar lordosis, and degenerative facet disease at L5-S1. (Tr. 481). On February 19, 2009, Plaintiff treated with Dr. Mannino for discomfort in her left ring and pinky fingers. (Tr. 263-65). Plaintiff reported experiencing "numbness and tingling that comes all the way down from her [left] elbow." (Tr. 263). She further noted experiencing continued pain in her right MCP joint and numbness and tingling of the right hand. (Tr. 263). Examination of Plaintiff's left hand and arm revealed tenderness, a positive Tinel's sign at the elbow, and decreased sensation to pinprick in the ring and pinky fingers. (Tr. 263). Examination of Plaintiff's right hand revealed tenderness and swelling to Plaintiff's third MCP joint and decreased grip strength. (Tr. 263). Dr. Mannino noted that Plaintiff was unable to make a full fist with her right hand. (Tr. 263). He sought insurance authorization for EMG studies and MCP joint replacement. (Tr. 264).

On April 17, 2009, Plaintiff treated with Stephen Robinson, M.D., for radiating back and left leg pain. (Tr. 458-60). Plaintiff noted experiencing a "long history of low back pain," which dates back to a work-related injury she sustained in the 1970s. (Tr. 459). Plaintiff stated that it has "gotten to the point where she just cannot do . . . work." (Tr. 459). Examination revealed reduced range of motion and decreased sensation in the left anterior

thigh.  (Tr. 459).  Dr. Robinson ordered an MRI and placed Plaintiff on total disability.  (Tr. 459-60).

On April 30, 2009, Plaintiff returned to Dr. Mannino, who found Plaintiff to have a "very positive" Tinel's sign over the cubital tunnel and "altered sensation" over the ulnar border of her left hand.  (Tr. 413-14).

On May 12, 2009, Plaintiff treated with Dr. Robinson for worsening low back pain.  (Tr. 455-57).  Examination revealed limited flexion, extension, and rotation.  (Tr. 456).  Dr. Robinson stated that Plaintiff's "chronic lumbar radicular complaints are questionably secondary to stenosis."  (Tr. 456).  He sought insurance authorization for a lumbar neural scan.  (Tr. 456).

On June 11, 2009, Eduardo Alvarez, M.D. examined Plaintiff at the request of the State Insurance Fund.  (Tr. 320-22).  Plaintiff reported experiencing intermittent low back pain, which occasionally radiated down into the left leg with numbness and tingling.  (Tr. 321).  Plaintiff noted that her pain is worsened with prolonged sitting and standing and lifting and bending.  (Tr. 321).  Examination revealed limited range of motion to Plaintiff's lumbar spine.  (Tr. 321).  Dr. Alvarez assessed Plaintiff's low back pain as being causally related to the work injury she sustained in the 1970s or 1980s and prescribed physical therapy.  (Tr. 322).  He opined that she was "unable to return to work as a highway maintainer."  (Tr. 322).

On June 23, 2009, Plaintiff returned to Dr. Robinson, who noted that Plaintiff's MRI revealed a "question of a disc protrusion."  (Tr. 452-54).  He continued to await insurance authorization for a "small pain fiber study" to determine whether neural blocks were an appropriate treatment.  (Tr. 453).

On July 17, 2009, an EMG of Plaintiff's left arm revealed mild left ulnar nerve entrapment neuropathy across the elbow. (Tr. 419).

On September 9, 2009, Plaintiff treated with Dr. Robinson for continuing low back pain. (Tr. 446-48). Dr. Robinson noted that Plaintiff "continues to struggle with pain across the low back with intermittent radiation into the left lateral thigh and occasionally the calf." (Tr. 447). Examination revealed moderate tenderness to the left lower paraspinal muscle and a positive seated straight leg raise on the left. (Tr. 447). Dr. Robinson continued Plaintiff on total disability. (Tr. 448).

On November 14, 2009, Plaintiff presented to consultative examiner George Sirotenko, D.O. (Tr. 483-86). Plaintiff reported experiencing right hand pain, low back pain, and occasional tingling and numbness in her left hand. (Tr. 483). An examination revealed tenderness over the MCP joint of Plaintiff's right middle finger, paralumbar tenderness to L1 to L5, and a limited squat. (Tr. 484-85). Dr. Sirotenko opined that Plaintiff had "[m]ild limitations regarding lumbar spine forward flexion, extension and rotation" and should avoid "pushing, pulling[,] or lifting objects greater than a moderate degree of weight on a repetitive basis." (Tr. 485).

On January 28, 2010, Plaintiff treated with Dr. Mannino for continuing left arm pain, tingling, and numbness, which radiated into her forearm. (Tr. 506-07). Examination revealed tenderness to the left lateral epicondyle region and "increased discomfort as well as numbness and tingling" to palpation of Plaintiff's cubital tunnel. (Tr. 506). Dr. Mannino prescribed Voltran gel and sought insurance authorization for a left cubital tunnel release. (Tr. 506-07). He also provided Plaintiff with a "band to wear to help with discomfort." (Tr. 506).

On March 10, 2010, Plaintiff returned to Dr. Robinson for the results of a functional capacity evaluation ("FCE") performed on March 5, 2010. (Tr. 520-23). Dr. Robinson noted that Plaintiff's "FCE results indicate that she is capable of working at the light physical demand level for an 8-hour day and that her specific acceptable leg lift capability is 20 pounds and her shoulder lift capability is 20 pounds." (Tr. 521). Dr. Robinson provided her with a back-to-work slip, which restricted her to light work with a 20- pound shoulder and leg lifting limit. (Tr. 522). On March 29, 2010, Dr. Robinson returned Plaintiff to "regular work" with no restrictions. (Tr. 527).

### b.     Hearing testimony

Plaintiff testified that she was unable to work from April 2009 to May 2010 due to a back injury caused when she slipped on ice while getting into her truck. (Tr. 44). Plaintiff reported that during the relevant period her back pain interfered with her abilities to sit, stand, walk, and bend. (Tr. 45-46). Plaintiff noted that she still experiences intermittent back pain. (Tr. 47). She testified, "I get the pain off and on. When I'm at work, I try to do my best for my co-workers, and they do help me out." (Tr. 47).

## II.     STANDARD OF REVIEW

The court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the court must determine whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F. 3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F. 2d 8, 9 (2d Cir. 1990); Shane v. Chater, 1997 WL 426203, at *4 (N.D.N.Y. July 16, 1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the court reviews whether the Commissioner's findings are supported by substantial evidence within the administrative

record.  See Tejada, 167 F. 3d at 773; Balsamo, 142 F. 3d at 79; Cruz, 912 F. 2d at 9; Rutherford v. Schweiker, 685 F. 2d 60, 62 (2d Cir.1982).  The Commissioner's finding will be deemed conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g); see also, Perez, 77 F. 3d at 46; Rivera v. Sullivan, 923 F. 2d 964, 967 (2d Cir. 1991).  In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).  Although the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "'a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion." Vargas v. Sullivan, 898 F. 2d 293, 296 (2d Cir. 1990) (quoting Rivera v. Schweiker, 717 F. 2d 719, 723 (2d Cir. 1983)) (internal quotation marks omitted).  Where the record supports disparate findings and provides adequate support for both the plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations.  See Quinones v. Chater, 117 F. 3d 29, 36 (2d Cir. 1997) (citing Schauer v. Schweiker, 675 F. 2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F. 2d 122, 126 (2d Cir. 1990)).

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The administrative regulations established by the Commissioner require the ALJ to apply a five-step evaluation to determine whether an individual qualifies for disability insurance benefits.  See 20 C.F.R.

§§ 404.1520, 416.920; see also Williams v. Apfel, 204 F. 3d 48, 48–49 (2d Cir.1999); Bush v. Shalala, 94 F.2d 40, 44–45 (2d Cir. 1996).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment which is listed in Appendix 1 of the regulations, [t]he [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Barry v. Schweiker, 675 F. 2d 464, 467 (2d Cir. 1982).

### III. DISCUSSION

#### a. ALJ's determination that Plaintiff could perform the full range of medium work

Plaintiff argues the ALJ's determination that Plaintiff was capable of the "full range of medium work" was unsupported by substantial evidence. P. Mem. 12.

The ALJ must determine a claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1545. In determining a claimant's RFC, the ALJ must base his findings on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Remand is appropriate where the court Is "'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'" Pratts v. Chater, 94 F. 3d 34, 39 (2d Cir. 1996) (quoting Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)).

In Pratts, the court remanded the case to the ALJ because the ALJ's RFC determination was not supported by substantial evidence. 94 F.3d at 38. Specifically, the ALJ's opinion did not mention significant diagnoses, tests, and treatment notes that were in

- 10 -

the record. Id. The court remanded the case because it could not find the ALJ based his decision on substantial evidence. Id.

Here, Plaintiff argues the ALJ's opinion that Plaintiff was not disabled between January 21, 2009 and March 18, 2010 was not supported by substantial evidence. P. Mem. 12. The Court agrees. In the ALJ's RFC analysis, the only reference to evidence of Plaintiff's condition is Dr. Sirotenko's opinion that Plaintiff "had mild limitation in lumbar spine forward flexion, extension, and rotation." (Tr. 28). She also "had to avoid pushing, pulling or lifting objects greater than a moderate degree of weight on a repetitive basis." (Tr. 28). Other than these two sentences, the ALJ's opinion is devoid of medical evidence from the relevant time period.

After review of the administrative record, it is clear that the ALJ failed to account for significant medical evidence from January 2009 to March 2010. Most importantly, the ALJ failed to mention Dr. Robinson's medical evaluations from that period. Dr. Robinson determined Plaintiff's status was "Totally Disabled" beginning April 17, 2009. Dr. Robinson again found Plaintiff to be impaired 100% on May 12, 2009, June 23, 2009, August 4, 2009 September 9, 2009, October 20, 2009, January 20, 2010. (Tr. 448, 451, 454, 457, 516, 519). Dr. Robinson did not find Plaintiff capable of doing light work until March 10, 2010. (Tr. 522).

Dr. Robinson's opinions are significant evidence of Plaintiff's disability during the relevant time period. The Court cannot fathom the ALJ's opinion with its failure to address these opinions. Accordingly, the case must be remanded to the ALJ to evaluate Dr. Robinson's opinions.

### b. The ALJ's failure to evaluate Dr. Sirotenko's and Dr. Alvarez's opinions

Plaintiff argues the ALJ erred in failing to state the weight he accorded to Dr. Sirotenko's and Dr. Alvarez's opinions. P. Mem. 13. The ALJ must evaluate every medical opinion it receives. 20 C.F.R. § 404.1537(c). In evaluating medical opinions, the ALJ must weight the length of the treatment relationship, the frequency of examination by the treating physician, the medical evidence supporting the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Failure to evaluate medical opinions is grounds for remand. English v. Comm'r of Soc. Sec., No. 6:05-CV-905, 2008 U.S. Dist. LEXIS 7762, at *14 (N.D.N.Y. 2008).

The Commissioner argues that remand is not necessary when the court can "glean the rationale of an ALJ's decision." Barringer v. Comm'r of Soc. Sec., 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005). Thus, the Commissioner argues, the ALJ's failure to explicitly evaluate the medical opinions is not grounds for remand.

The Court is unable to glean the ALJ's rationale from his opinion. The ALJ devoted two sentences to describing Dr. Sirotenko's treatment of Plaintiff. (Tr. 28). In those two sentences, the ALJ failed to offer any evaluation or assessment of the Dr. Sirotenko's opinion. The ALJ failed to mention Dr. Alvarez's medical opinion at all. Accordingly, the Court remands this case to the ALJ to evaluate the opinions of Dr. Sirotenko and Dr. Alvarez.

### c. The ALJ's findings on Plaintiff's credibility

Plaintiff argues the ALJ erred in failing to properly evaluate Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms. P. Mem. 15. The Court agrees.

The ALJ must first look to objective medical evidence to establish the existence of an impairment which "could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A). Once the ALJ has found objective evidence that shows a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, he must evaluate the intensity and persistence of the symptoms. 20 C.F.R. § 404.1529(c)(1). In evaluating the intensity and persistence of the symptoms, the ALJ must consider the claimant's statements about her symptoms. 20 C.F.R. § 416.929. "It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" Social Security Ruling 96-7p.

Here, the ALJ's evaluation of Plaintiff's credibility is not sufficient. The ALJ made only one statement about Plaintiff's credibility. "[H]er statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible." (Tr. 28). The ALJ gave no other explanation for his evaluation of Plaintiff's statement. Such a conclusory statement is insufficient.

## IV. CONCLUSION

For the foregoing reasons the Commissioner's decision denying SSI benefits is **VACATED** and **REMANDED** for further proceedings in accordance with this opinion.

IT IS SO ORDERED.

Dated: November 22, 2013
Albany, NY

Thomas J. McAvoy
Senior, U.S. District Judge

- 13 -